Clifford Neal TOWNSEND, Appellant,

v.

The STATE of Texas, Appellee.

No. 109–93.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 10, 1993.

Paul Mewis, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Carol M. Cameron, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

PER CURIAM.

In a trial before the court in 1992 Appellant was convicted of driving while intoxicated. The court found an enhancement allegation true and assessed punishment at confinement for two years, probated for two years, and a $300 fine. The Court of Appeals affirmed his conviction. *Townsend v. State*, 846 S.W.2d 386 (Tex.App.—Houston [14th Dist.] 1992).

At the hearing on a motion for new trial, Appellant testified he never executed a written waiver of his right to a jury trial. He also testified he knew he was entitled to a trial by jury, but he accepted counsel's advice and chose to be tried by the court. The Court of Appeals held that the trial court violated Article 1.13(a), V.A.C.C.P., by failing to obtain a written jury waiver. However, the appellate court concluded that the error was harmless. We granted Appellant's petition to determine whether the Court of Appeals erred in conducting a harm analysis.

The State responds that Art. 1.13 does not apply to misdemeanor cases and that the Court of Appeals should not have reviewed the merits of Appellant's point of error because Appellant did not include the statement of facts from the guilt and punishment phases of trial in the appellate record. The State has not cross-petitioned for, nor have we granted, review of the Court of Appeals' holdings on these matters; therefore, we will not address them.[1] *Haughton v. State*, 805 S.W.2d 405, 407 n. 1 (Tex.Cr. App.1990); *Keith v. State*, 782 S.W.2d 861,

---

1. We point out that the Court of Appeals relied on *State ex rel. Curry v. Carr*, 847 S.W.2d 561 (Tex.Cr.App.1992), in which this Court held that Art. 1.13(a) as amended in 1991 applies to misdemeanor cases, entitling the State to have a misdemeanor case tried before a jury when the State does not consent to and approve a defendant's jury waiver.

863 n. 4 (Tex.Cr.App.1989); *Wilson v. State*, 772 S.W.2d 118, 120 n. 3 (Tex.Cr.App.1989).

Turning to the propriety of a harm analysis, we note the Court of Appeals decided this case before this Court issued the opinion in *Meek v. State*, 851 S.W.2d 868 (Tex.Cr. App.1993). In *Meek*, we held that a violation of Art. 1.13's requirement that a defendant sign and file a jury waiver is not subject to a harm analysis. *Id.* at 871.

 The State contends a harm analysis in this case would be appropriate and would show the error was harmless. We adhere to our holding in *Meek* based on the rationale therein and as further explained in *Warmowski v. State*, 853 S.W.2d 575, 578 (Tex.Cr. App.1993), and *Marin v. State*, 851 S.W.2d 275, 281–82 (Tex.Cr.App.1993). Error in trying a defendant before the court without the defendant's written jury waiver requires reversal.

The judgments of the Court of Appeals and the trial court are reversed, and this cause is remanded to the trial court.

McCORMICK, P.J., concurs in the result.

MALONEY, Judge, concurring.

I join in the opinion of the majority because the issue is presented in a direct appeal setting rather than in a post-conviction writ of habeas corpus setting. Although *Meek* held that the defendant's failure to sign a jury waiver was not subject to a harmless error analysis, I would point out that such requirement, while clearly designed to ensure that a defendant's constitutional right to a trial by jury is waived only upon his consent, is nevertheless statutory and does not itself rise to constitutional proportions. As such, this issue is not cognizable in a post-conviction writ of habeas corpus. *Ex parte Sadberry*, 864 S.W.2d 541, (Tex.Crim.App. 1993); *see also Ex parte Banks*, 769 S.W.2d 539, 540 (Tex.Crim.App.1989) (habeas corpus available only to review jurisdictional defects or denials of fundamental or constitutional rights); *Ex parte Watson*, 601 S.W.2d 350, 352 (Tex.Crim.App.1980) (habeas corpus review only available for questions of jurisdictional defect or denials of fundamental or constitutional rights); *Ex parte McKay*, 82

Tex.Crim. 221, 199 S.W. 637, 639, 642 (1917) (habeas corpus is not a method of appeal and cannot be invoked for mere irregularities).

CAMPBELL and WHITE, JJ., join.

OVERSTREET, Judge, dissenting.

I disagree with the majority's conclusion that the court of appeals erred in conducting a harm analysis regarding the trial court's failure to obtain the requisite written jury waiver. In *Meek v. State*, 851 S.W.2d 868, 871 (Tex.Cr.App.1993), we held that the application of a harmless error analysis in such a situation would be perverse and inappropriate. In *Meek*, that defendant did not recall being admonished as to his right to trial by jury; however, in the instant cause, appellant testified that he knew that he was entitled to a trial by jury but accepted his attorney's advice and chose to be tried by the court.

In addition to *Meek*, in several recent cases, we have found that some types of error are not subject to the harm analysis of Tex.R.App.Pro. 81(b)(2). *See, e.g., Warmowski v. State*, 853 S.W.2d 575 (Tex.Cr.App. 1993) (involving erroneously failing to grant a requested severance of cases); *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App.1993) (involving failure to allow appointed counsel 10 days of trial preparation per Article 1.051(e), V.A.C.C.P.); *Beebe v. State*, 811 S.W.2d 604 (Tex.Cr.App.1991) (involving denying requested 10 days to prepare for trial per Article 28.10, V.A.C.C.P., after the charging instrument is amended prior to the day of trial); *Sodipo v. State*, 815 S.W.2d 551 (Tex. Cr.App.1991) (op. on reh'g) (involving the State being allowed, over objection, to amend the charging instrument on the day of trial prior to commencing trial in contravention of Article 28.10, V.A.C.C.P.); *Chappell v. State*, 850 S.W.2d 508 (Tex.Cr.App.1993) (involving allowing a second unauthorized shuffle of the jury panel); *Nunfio v. State*, 808 S.W.2d 482 (Tex.Cr.App.1991) (involving denying the asking of a proper question during jury panel voir dire). Nevertheless, I am now of the opinion that this blanket rule of reversal, without regard to harm, in the face of certain errors is inappropriate.

The plain language of Rule 81(b)(2) itself states that if the record reveals error in the proceedings below, the appellate court shall reverse "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Thus the rule contemplates that an appellate court review the record in each case where error has been found for a determination of whether it can conclude that the error "made no contribution...." In *Warmowski v. State,* 853 S.W.2d at 578, we noted that if the nature of an error is such that the record will not provide a basis for estimating its contribution to conviction or punishment, then it does not matter whether such error is declared subject to a harm analysis or not because the result will invariably be the same; i.e. on a record from which the likelihood of harm cannot meaningfully be estimated, the beneficiary of the error will be unable to satisfy its burden. *Marin* also indicated that applying Rule 81(b)(2)'s harmless error analysis is inappropriate to prophylactic rules of procedure designed to impose a uniform requirement where the fairness of a flexible rule would be too uncertain. *Marin v. State,* 851 S.W.2d at 281. It thus limited application of Rule 81(b)(2) to errors concerning which the record is likely to provide concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error, thus refusing to apply it to any error whose ultimate consequence defies empirical examination on the basis of a typical appellate record alone. *Id.* at 282. Nevertheless, even such errors in which the "typical" appellate record might defy such empirical examination, there no doubt will exist the "atypical" record in which such examination will indeed reveal beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Therefore our rigid holding that some types of error are automatically outside the purview of Rule 81(b)(2) thus removes from consideration particular cases involving those types of error in which their atypical records do allow a determination of harmlessness. If Rule 81(b)(2) were applied, even to those cases, in the "typical" case its "typical" record would not allow the likelihood of harm to be meaningfully esti-

mated, thus it would not be held harmless; but in the atypical case with its atypical record which would provide meaningful data to determine harm, then it could be determined whether the error was or was not harmless based upon that atypical record.

I believe that in not allowing such analysis with respect to some errors, we have spoken too broadly in *Meek* and the above-noted cases, and improperly limit appellate review of certain errors. I believe that *Meek* and these other cases need to be modified to allow harm analysis pursuant to Rule 81(b)(2) even when the error is such that it is extremely difficult to determine whether it affected the outcome of the trial. Regardless of the difficulty of making such a determination, if the appellate court is unable to determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment, reversal is required pursuant to the very language of Rule 81(b)(2). Likewise, regardless of the difficulty of making such a determination, if the appellate court *is* able to determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment, reversal is not required. Rule 81(b)(2) is just as workable on a case-by-case basis with respect to errors in which it is difficult to ascertain the error's influence on the conviction or punishment as it is with respect to errors where it is easy (i.e. is not difficult) to make such a determination. Thus the rule can and should be applied consistently.

Even in reviewing jury charge error, which is analyzed pursuant to *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985) (op. on reh'g), harm is not automatically presumed but rather is analyzed under standards dependent upon whether or not the error was objected to or preserved. *(But see, Arnold v. State,* 786 S.W.2d 295 (Tex.Cr.App.1990), *cert. denied,* 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990) and *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1988) (op. on reh'g) for application of Rule 81(b)(2) harm analysis to punishment jury charge *Rose* error.) There are certainly situations in which it could be said that it would be difficult to examine the record and make a harm deter-

mination per the dictates of *Almanza;* however, that difficulty does not stop appellate courts from proceeding to make that determination in the face of such difficulties. *See, e.g., Arline v. State,* 721 S.W.2d 348 (Tex.Cr. App.1986); *Castillo–Fuentes v. State,* 707 S.W.2d 559 (Tex.Cr.App.1986) (wherein this Court observed that an exchange on the record "appear[ed] to complicate [its] fundamental error assessment[,]" but such did not prevent it from conducting such assessment); *Lawrence v. State,* 700 S.W.2d 208 (Tex.Cr. App.1985); *Moore v. State,* 694 S.W.2d 528 (Tex.Cr.App.1985). Such should also be done in the case of non-jury charge errors governed by Rule 81(b)(2).

In sum, I believe that Rule 81(b)(2) should be applied even-handedly and that errors should be analyzed thereunder to determine if reversal is required. Because the majority continues down the path of automatic reversal for certain types of error, I respectfully dissent.[1]

---

**1.** I note that based upon appellant's above-noted admission that he knew that he was entitled to a jury trial but accepted his counsel's advice and chose to be tried by the court, the court of appeals' conclusion that the error was harmless seems quite appropriate. While in *Marin v. State,* 851 S.W.2d at 279 we noted that a defendant's right to jury trial is such that it must be implemented unless it is expressly waived, the record in the instant cause indicates that appellant did just that, i.e. upon the advice of counsel expressly waived his right to a jury trial. In the face of such a record, the court of appeals was no doubt correct in concluding that the error was harmless beyond a reasonable doubt.