COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

THE STATE OF TEXAS,                                     )                    No. 
08-02-00064-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       243rd District Court

                                                                              )

WILLIAM OWEN JUVRUD,                               )                   of El Paso County, Texas

                                                                              )

Appellee.                           )                       (TC# 20000D04369)

 

O
P I N I O N

 

In
this case of first impression, we address whether a district court has the
authority to discharge a defendant from deferred adjudication community
supervision and dismiss the indictment before the defendant has satisfactorily
completed a minimum of two years of community supervision.  Answering this question in the affirmative,
we affirm the trial court=s
order terminating Juvrud=s
community supervision and dismissing the indictment.

FACTUAL AND PROCEDURAL SUMMARY








On
September 14, 2000, an El Paso County grand jury indicted William Owen Juvrud,
an attorney, for misapplication of fiduciary property (Count 1) and theft over
$20,000 (Count 2) from his former employer, Gage, Gage & Kern, L.L.P., an
El Paso law firm.  On July 23, 2001,
Juvrud entered a negotiated plea of guilty to Count 1 and the State,
represented by a special prosecutor, dismissed Count 2 of the indictment.  In accordance with the agreement, the trial
court deferred adjudication of guilt and placed Juvrud on community supervision
for a term of ten years.  The court
ordered Juvrud to pay restitution to the law firm in the sum of $15,000.  Less than four months later, Juvrud filed a AMotion to Dismiss and Discharge Probation.@ 
Over the State=s
objection that Juvrud had not completed two years of his community supervision
term, the trial court granted Juvrud=s
motion.  The State timely filed notice of
appeal.  

STATE=S
RIGHT TO APPEAL

Before
reaching the merits, we must address Juvrud=s
challenge to the State=s
ability to appeal the trial court=s
order dismissing the indictment.  Article
44.01(a)(1) of the Code of Criminal Procedure authorizes the State to appeal
any order of a trial court dismissing an indictment.  See Tex.Code
Crim.Proc.Ann. art. 44.01(a)(1)(Vernon Pamph. 2002).  Citing State v. Moreno, 807 S.W.2d 327
(Tex.Crim.App. 1991), Juvrud contends that the State=s
right to appeal is limited to an order of the trial court which effectively
terminates the prosecution before trial on the merits.  Because the trial court dismissed the
indictment after he had entered his guilty plea, Juvrud reasons that the State
is not permitted to appeal.  We disagree.








In
Moreno, the trial court granted the defendant=s
motion to quash the indictment but struck through language in the order stating
that Athis
cause is dismissed.@  Id. at 328.  The court of appeals dismissed the State=s appeal for want of jurisdiction since
the trial court had not ordered the indictment dismissed and the State had not
attempted to amend the indictment.  Id.
at 329.  The Court of Criminal Appeals
reversed, holding that the phrase Adismisses
an indictment@ as used
in Article 44.01(a)(1) is implicated whenever the trial court=s order forces any alteration of a
charging instrument before trial on the merits and the State is not willing to
comply with that order.  Id. at
334.  En route to this decision, the
court noted that when the Legislature adopted Article 44.01 in 1987, it
intended to afford the State the same appellate powers afforded the federal
government under 18 U.S.C. '
3731.  Moreno, 807 S.W.2d at
332.  Under the federal statute, the
government is permitted to appeal from a judgment, decision, or order of a
district court dismissing an indictment or  information, except that no appeal lies where
the double jeopardy clause prohibits further prosecution.  Id. at 331.  In other words, the State is not permitted to
appeal from an acquittal of the defendant following trial on the merits.  With this in mind, the Court of Criminal
Appeals concluded that the State has the power to appeal from any trial court
order concerning an indictment or information whenever the order effectively
terminates the prosecution in favor of the defendant.  Id. 
Given that the State is prohibited from appealing an acquittal,  the court=s
specific holding that the State may appeal from an order dismissing an
indictment before trial on the merits makes sense.  As a general rule, dismissal of an indictment
after trial on the merits will implicate the double jeopardy clause.

Here,
Juvrud=s
prosecution was still pending prior to the entry of the trial court=s order dismissing the indictment.  If Juvrud had violated the terms and
conditions of probation, the State had the ability to file a motion to
adjudicate his guilt and proceed with sentencing.  The trial court=s
order discharging Juvrud from community supervision and dismissing the
indictment prior to the expiration of the community supervision period
effectively terminated the prosecution. 
While the dismissal of the indictment occurred subsequent to the entry
of Juvrud=s guilty
plea rather than before trial on the merits, the order nevertheless had the
effect of terminating the prosecution before its conclusion.  In these circumstances, the State=s right of appeal does not implicate
the double jeopardy clause.  We conclude
that permitting the State to appeal does not violate Moreno.








Juvrud
relies on two other cases in support of his argument that the State is not
permitted to appeal.  See State v.
Cordell, 34 S.W.3d 719 (Tex.App.--Fort Worth 2000, pet. ref=d); State v. Welch, 810 S.W.2d
13 (Tex.App.--Amarillo 1991, no pet.). 
In Cordell, the trial court granted the defendant=s motion to quash one of two paragraphs
of an information charging him with driving while intoxicated.  Cordell, 34 S.W.3d at 720.  The State appealed.  The defendant argued that because the State
could have proceeded to trial on the remaining paragraph, the order did not
terminate the prosecution.  Id.  Following Moreno, the Fort Worth Court
of Appeals determined that the order effectively terminated the prosecution
with respect to the quashed paragraph such that the State had the right to
appeal.  Id. at 720-21. 

In
Welch, the trial court denied the State=s
motion for continuance and called the case for trial.  Welch, 810 S.W.2d at 14.  When the State presented no witnesses or
other evidence, the defense moved for an instructed verdict of not guilty.  Id. at 14-15.  The trial court granted the motion and later
entered a written order entitled AOrder
Declaring Instructed Verdict@
which dismissed the cause with prejudice. 
Id. at 15.  Because the
trial court effectively found the defendant not guilty following the attachment
of jeopardy, the court of appeals held that the State did not have the right of
appeal.  Id. at 16.  This case is distinguishable as it does not
involve an acquittal following the attachment of jeopardy.

Because
the trial court=s order
had the effect of terminating the prosecution before its conclusion, the State
is permitted to appeal by virtue of Article 44.01(a)(1).  Consequently, we may exercise jurisdiction.

EARLY TERMINATION OF DEFERRED ADJUDICATION








In
its sole point of error, the State contends that the trial court lacked the
authority to discharge Juvrud=s
community supervision and dismiss the indictment before he had satisfactorily
completed two years of community supervision as required by Article 42.12,
section 20.[1]  Juvrud responds that Section 20 does not
apply to deferred adjudication community supervision.  Instead, he maintains the trial court
discharged him pursuant to Article 42.12, section 5(c),[2]
which does not impose the two year minimum.








Article
42.12 governs the various forms of community supervision, including deferred
adjudication.  As used in Article 42.12,
the term Acommunity
supervision@ refers
to both Aregular@ or Astraight@ community supervision and deferred
adjudication.  See Tex.Code Crim.Proc.Ann. art. 42.12, ' 2(2)(Vernon Supp. 2002)(defining Acommunity supervision@ to mean the placement of a defendant
by a court under a continuum of programs and sanctions, with conditions imposed
by the court for a specified period during which criminal proceedings are
deferred without an adjudication of guilt, or a sentence of imprisonment or
confinement and/or a fine is suspended in whole or in part).  Different forms of community supervision are
addressed in separate sections of Article 42.12:  judge-ordered community supervision (Section
3), jury-recommended community supervision (Section 4), deferred adjudication
(Section 5), shock community supervision in felony and misdemeanor cases
(Sections 6 and 7), and the state boot camp program (Section 8).  Section 5(a) authorizes a trial court to
defer the adjudication of guilt and place the defendant on community
supervision while Section 5(c), with certain limitations, permits the trial
court to discharge the defendant either after or prior to the expiration of the
term of community supervision.  Tex.Code Crim.Proc.Ann. art. 42.12, ' 5(a), (c).  Unlike Section 20, Section 5(c) imposes no
minimum term which must be completed before becoming eligible for early
termination.  Since Section 20 addresses
termination of community supervision, the definition of which includes deferred
adjudication, the State reasons that it must apply to deferred adjudication as
well as regular community supervision.

Section 5(c)

The
current version of Section 5(c) provides as follows:

(c)  On expiration of a community supervision
period imposed under Subsection (a) of this section, if the judge has not
proceeded to adjudication of guilt, the judge shall dismiss the proceedings
against the defendant and discharge him. 
The judge may dismiss the proceedings and discharge a defendant,
other than a defendant charged with an offense requiring the defendant to
register as a sex offender under Chapter 62, as added by Chapter 668, Acts of
the 75th Legislature, Regular Session, 1997, prior to the expiration of the
term of community supervision if in the judge=s
opinion the best interest of society and the defendant will be served.  The judge may not dismiss the proceedings and
discharge a defendant charged with an offense requiring the defendant to
register under Chapter 62, as added by Chapter 668, Acts of the 75th
Legislature, Regular Session, 1997. 
Except as provided by Section 12.42(g), Penal Code, a dismissal and discharge
under this section may not be deemed a conviction for the purposes of
disqualifications or disabilities imposed by law for conviction of an
offense.  For any defendant who receives
a dismissal and discharge under this section:

 

(1)  upon conviction of a subsequent offense, the
fact that the defendant had previously received community supervision with a
deferred adjudication of guilt shall be admissible before the court or jury to
be considered on the issue of penalty;

 

(2)  if the defendant is an applicant for a
license or is a licensee under Chapter 42, Human Resources Code, the Texas
Department of Human Services may consider the fact that the defendant
previously has received community supervision with a deferred adjudication of
guilt under this section in issuing, renewing, denying, or revoking a license
under that chapter; and

 

(3)  if the defendant is a person who has applied
for registration to provide mental health or medical services for the
rehabilitation of sex offenders, the Interagency Council on Sex Offender
Treatment may consider the fact that the defendant has received community
supervision under this section in issuing, renewing, denying, or revoking a
license or registration issued by that council. 
[Emphasis added.]

 

Tex.Code
Crim.Proc.Ann. art. 42.12, '
5(c).








Our
deferred adjudication statute was first enacted in 1975.  Act of May 7, 1975, 64th Leg., R.S., ch. 231,
' 1, 1975 Tex.Gen.Laws 572 (formerly Article 42.12, ' 3d). 
The predecessor to Section 5(c) simply provided that A[t]he court may dismiss the proceedings
and discharge the defendant prior to the expiration of the term of probation if
in its opinion the best interest of society and the defendant will be served.@ 
Id., 1975 Tex.Gen.Laws
573.  A comparison of the former statute
and the highlighted language in the current version reveals that the general
provision for early termination of deferred adjudication has remained
essentially unchanged despite many other changes to the statute.  In 1993, the deferred adjudication law was
moved to Article 42.12, section 5.  Acts
1993, 73rd Leg., R.S., ch. 900, '
4.01, 1993 Tex.Gen.Laws 3716,
3719-20.  In 1995, the Legislature
amended Section 5(c) to require that a person charged with certain sex offenses
against children serve two-thirds of the period of community supervision before
becoming eligible for early termination.[3]  Acts 1995, 74th Leg., R.S., ch. 256, ' 2, 1975 Tex.Gen.Laws 2191. 
With the 1999 amendments, the Legislature dropped the two-thirds
requirement and instead prohibited early discharge for a defendant required to
register under the sex offender registration statute.  Acts 1999, 76th Leg., R.S., ch. 1415, ' 5, 1999 Tex.Gen.Laws 4832.

Section 20

Section
20, which is entitled AReduction
or Termination of Community Supervision,@
provides as follows:








(a)  At any time, after the defendant has
satisfactorily completed one-third of the original community supervision period
or two years of community supervision, whichever is less, the period of
community supervision may be reduced or terminated by the judge.  Upon the satisfactory fulfillment of the
conditions of community supervision, and the expiration of the period of
community supervision, the judge, by order duly entered, shall amend or modify the
original sentence imposed, if necessary, to conform to the community
supervision period and shall discharge the defendant.  If the judge discharges the defendant under
this section, the judge may set aside the verdict or permit the defendant to
withdraw his plea, and shall dismiss the accusation, complaint, information or
indictment against the defendant, who shall thereafter be released from all
penalties and disabilities resulting from the offense or crime of which he has
been convicted or to which he has pleaded guilty, except that:

 

(1)  proof of the conviction or plea of guilty
shall be made known to the judge should the defendant again be convicted
of any criminal offense; and

 

(2)  if the defendant is an applicant for a
license or is a licensee under Chapter 42, Human Resources Code, the Texas
Department of Human Services may consider the fact that the defendant
previously has received community supervision under this article in issuing,
renewing, denying, or revoking a license under that chapter.

 

(b)  This section does not apply to a defendant
convicted of an offense under Sections 49.04-49.08, Penal Code, a defendant
convicted of an offense for which on conviction registration as a sex offender
is required under Chapter 62, as added by Chapter 668, Acts of the 75th
Legislature, Regular Session, 1997, or a defendant convicted of an offense
punishable as a state jail felony. 
[Emphasis added.]

 

Tex.Code
Crim.Proc.Ann. art. 42.12, '
20.

 








The
early termination provision was first enacted in 1957 as Article 781d, section
7, and it remained largely unchanged until recent amendments.  Acts 1957, 55th Leg., R.S., ch. 226, 1957 Tex.Gen.Laws 466, 468.[4]  In 1965, the Legislature moved it to Article
42.12, section 7, and modified the language so that the section applied to a
plea of nolo contendere.  Acts
1965, 59th Leg., R.S., ch. 722, 1965 Tex.Gen.Laws
489, 492.  In 1983, the Legislature
amended Section 7 to provide that early termination did not apply to a
defendant on probation for certain alcohol-related offenses.  Acts 1983, 68th Leg., R.S., ch. 303, ' 12, 1983 Tex.Gen.Laws 1591.  The
1989 amendments moved the early termination provision to Section 23 and added
the provision pertaining to an applicant for a license under Chapter 42.  Acts 1989, 71st Leg., R.S., ch. 785, ' 4.17, 1989 Tex.Gen.Laws 3498, 3516. 
In 1993, the Legislature moved the early termination law to its current
location, Section 20, and  moved the
exceptions pertaining to alcohol-related offenses to subsection (b) while
adding state jail felonies to the list of offenses excepted from the section=s application.  See Act of June 19, 1993, 73rd Leg.,
R.S., ch. 900, ' 4.01,
1993 Tex.Gen.Laws 3716,
3739.  Further, the 1993 amendments
replaced all references to Aprobation@ and Aprobationary
period@ with Acommunity supervision@ and Aperiod
of community supervision.@[5]  Id. 
The same replacement of terminology occurred throughout Article
42.12.  Act of June 19, 1993, 73rd Leg.,
R.S., ch. 900, ' 4.01,
1993 Tex.Gen.Laws 3716-43.  Finally, in 1999, the Legislature added the
sex offender exception.  Acts 1999, 76th
Leg., R.S., ch. 1415, '
5(b), 1999 Tex.Gen.Laws 4832-33.

Standard of Review








In
determining whether Section 5(c) is the exclusive authority pertaining to early
termination of deferred adjudication or whether Section 20 also applies, we are
mindful that the overriding principle in interpreting statutes is to give
effect to the collective intent of the Legislature.  Boykin v. State, 818 S.W.2d 782, 785
(Tex.Crim.App. 1991).  When attempting to
discern this collective legislative intent or purpose, we necessarily focus our
attention on the literal text of the statute in question and attempt to discern
the fair, objective meaning of that text at the time of its enactment.  Id. 
We give effect to the plain meaning of the statute or provision unless
doing so would lead to absurd consequences that were not possibly intended by
the Legislature.  Id.








Asserting
that Sections 20 and 5(c) are general and specific provisions, respectively,
the State argues that when a specific provision and a general provision
conflict with one another, the specific provision should be read as controlling
over the general provision or as creating an exception to the general
provision.  Although the State does not
refer to it as such, the rule of statutory construction it relies upon is known
as the doctrine or rule of pari materia. 
See Burke v. State, 28 S.W.3d 545, 546-47 (Tex.Crim.App.
2000).  Statutes which relate to the same
person or thing, or to the same class of persons or things, or which have a
common purpose are in pari materia. 
Alejos v. State, 555 S.W.2d 444, 450 (Tex.Crim.App. 1977)(opinion
on reh=g.).  Statutes that are in pari materia are
to be construed together.  Burke,
28 S.W.3d at 546.  Any conflict between
their provisions will be harmonized, if possible, and effect will be given to
all the provisions of each act if they can be made to stand together and have
concurrent efficacy.  Id.  Further, general and special acts can be in
pari materia.  Id.  Where one statute deals with a subject in
general terms and another deals with a part of the same subject in a more
detailed way, the two should be harmonized if possible; but if there is any
conflict, the latter will prevail, regardless of whether it was passed prior to
the general statute, unless it appears that the legislature intended to make
the general act controlling.  Id.
at 546-47.  See also Tex.Gov=t Code Ann. '
311.026 (Vernon 1998).  Before the rule
of pari materia is applied, a threshold determination must be made
whether the two statutes in question are indeed in pari materia.  Cheney v. State, 755 S.W.2d 123, 127
(Tex.Crim.App. 1988).

Analysis

Section
5(c) does not merely authorize the trial court to terminate community
supervision early and dismiss the proceedings against the defendant, but rather
provides specific parameters for the trial court=s
exercise of this discretionary power. 
Section 5(c) specifically provides those offenses for which early
termination and discharge is not available, namely, any offense requiring the
defendant to register as a sex offender.[6]  Further, Section 5(c) specifies three
instances in which a judge, jury, or state agency may consider the fact that
the defendant previously has received community supervision with a deferred
adjudication of guilt even though the defendant may have obtained a dismissal
and discharge Aunder
[Section 5(c)].@

Like
Section 5(c), Section 20 specifies those offenses for which early termination
and discharge is unavailable:  driving
while intoxicated and related offenses, any offense requiring the defendant to
register as a sex offender, and any offense punishable as a state jail
felony.  See Tex.Code Crim.Proc.Ann. art. 42.12, ' 20(b). 
It also specifies those instances when a judge or state agency may
consider the fact that the defendant has previously received community
supervision pursuant to Article 42.12 even though the defendant may have been
discharged and the indictment dismissed Aunder  [Section 20].@








Significantly,
there are no references in Section 5(c) to Section 20 and nothing to give any
indication that the latter section also applies to deferred adjudication.  We likewise find it noteworthy that both
Section 5(c) and Section 20 refer to a dismissal and discharge Aunder this section,@ indicating that the Legislature viewed
these as separate and distinct early termination procedures.  This cuts against the State=s argument that Section 20 is intended
to apply broadly to all community supervision cases.  The Legislature went to great pains to set
out separately in Section 5(c) certain exceptions even though similar
exceptions are found in Section 20.  If
the Legislature had intended for Section 20=s
two-thirds/two-year limitation to apply to Section 5(c), it could have easily
said so or at least have made reference to this limitation in Section
5(c).  In 1995, the Legislature did just
that when it provided that a person charged with certain sex offenses against
children had to serve two-thirds of the period of community supervision before
becoming eligible for early termination. 
The fact that the Legislature included this limitation on eligibility
for early termination in Section 5(c) rather than Section 20 weighs
strongly in favor of Juvrud=s
position that Section 5(c) stands on its own and Section 20 simply does not
apply to deferred adjudication.








Other
language in Section 20 indicates that it is restricted to regular and Ashock@
community supervision.  In its second
sentence, Section 20 provides that upon the expiration of the reduced term of
community supervision, the judge shall amend or modify Athe
original sentence imposed, if necessary, to conform to the community
supervision period and shall discharge the defendant.@  [Emphasis added.]  In the case of deferred adjudication, a
sentence is not imposed.[7]  Similarly, Section 20 provides that Aproof of the conviction or plea of
guilty shall be made known to the judge should the defendant again be
convicted of any criminal offense.@  [Emphasis added.]  If the Legislature had intended Section 20 to
apply to deferred adjudication, it would not have used language referring to
the defendant being Aagain@ convicted since a person placed on
deferred has not been convicted in the first instance.  

The
State, however, seizes upon other language in Section 20 to argue that the
section must apply to deferred adjudication. 
Section 20 authorizes the judge to Aset
aside the verdict[8]
or permit the defendant to withdraw his plea@
and it provides that the defendant Ashall
thereafter be released from all penalties and disabilities resulting from the
offense or crime of which he has been convicted or to which he has pleaded
guilty.@  [Emphasis added.]  Although the State argues that the highlighted
portions necessarily refer to deferred adjudication, this argument fails to
consider that the same language is found in the original version of the statute
enacted in 1957, many years before deferred adjudication even existed in Texas.  See Acts 1957, 55th Leg., R.S., ch.
226, 1957 Tex.Gen.Laws 468.  Under these circumstances, it cannot be said
that the Legislature used this language to refer to deferred adjudication.[9]








Based
on the foregoing, we conclude that Section 20 applies only to regular and shock
community supervision, and Section 5(c) governs early termination of deferred
adjudication.  See also 43A George E. Dix & Robert O. Dawson, Texas Practice:  Criminal Practice and Procedure ' 40.133 (2d ed. 2001).  Therefore, Sections 5(c) and 20 are not in pari
materia.  Because Section 5(c)
provides no minimum term which must be served before the defendant is eligible
for early termination, the trial court had authority to terminate Juvrud=s community supervision and to dismiss
the proceedings against him. 
Accordingly, we overrule the State=s
sole point of error on appeal and affirm the trial court=s
order.

 

 

November 7, 2002

                                                                        


ANN CRAWFORD
McCLURE, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Publish)











[1]  Tex.Code Crim.Proc.Ann. art. 42.12, ' 20 (Vernon Supp. 2002).





[2]  Tex.Code Crim.Proc.Ann. art.
42.12, ' 5.





[3]  In 1995,
Section 5(c) provided:  AThe judge may dismiss the proceedings and discharge a
defendant charged with a felony described by Section 13B(b) of this article
only if in the judge=s opinion the best interest of society and the
defendant will be served and the defendant has successfully completed at least
two-thirds of the period of community supervision.@





[4]  When enacted,
Article 781d, ' 7 provided:   AAt any time, after the defendant has satisfactorily
completed one-third of the original probationary period or two years of probation,
whichever is the lesser, the period of probation may be reduced or terminated
by the court.  Upon the satisfactory
fulfillment of the conditions of probation, and the expiration of the period of
probation, the court, by order duly entered, shall amend or modify the original
sentence imposed, if necessary, to conform to the probation period and shall
discharge the defendant.  In case the
defendant has been convicted or has entered a plea of guilty, and the court has
discharged the defendant hereunder, such court may set aside the verdict or
permit the defendant to withdraw his plea, and shall dismiss the accusation,
complaint, information or indictment against such defendant, who shall
thereafter be released from all penalties and disabilities resulting from the
offense or crime of which he has been convicted or to which he has pleaded
guilty, except that proof of his said conviction or plea of guilty shall be
made known to the court should the defendant again be convicted of any criminal
offense.@





[5]  Prior to the
1993 amendments, Article 42.12 was known as the AAdult
Probation Law.@  The general
early termination provision was found in Section 23 and it spoke in terms of Aprobation@ and Aprobationary period.@  See Act of June 15, 1989, 71st Leg.,
R.S., ch. 785, 1989 Tex.Gen.Laws
3516, amended by Act of June 19, 1993, 73rd Leg., R.S., ch. 900, ' 4.01, 1993 Tex.Gen.Laws
3716, 3739.  With the 1993 amendments,
the Legislature changed the title of Article 42.12 to ACommunity Supervision.@  See Tex.Code
Crim.Proc.Ann. art. 42.12.





[6]  Deferred
adjudication is not available for driving while intoxicated and related
offenses.  Tex.Code Crim.Proc.Ann. art. 42.12, ' 5(d)(providing that deferred adjudication is
unavailable for an offense under Sections 49.04, 49.05, 49.06, 49.07, or
49.08).





[7]  We are aware
that, for purposes of the defendant=s right
to appeal the deferred adjudication order, the defendant=s placement on deferred adjudication is Apunishment assessed@ within
the meaning of Tex.Code Crim.Proc.Ann.
art. 44.01(j)(providing that the defendant=s Aright to appeal under Article 44.02 may be prosecuted
by the defendant where the punishment assessed is in accordance with [the
deferred adjudication statute]).@  See Watson v. State, 924 S.W.2d 711,
714 (Tex.Crim.App. 1996); Dillehey v. State, 815 S.W.2d 623, 626
(Tex.Crim.App. 1991).  It is well
established, however, that a defendant placed on deferred adjudication has not
had a sentence imposed.  See Donovan
v. State, 68 S.W.3d 633, 636 (Tex.Crim.App. 2002)(holding that for purposes
of Rule 21, a defendant placed on deferred adjudication has not had a sentence
imposed or suspended, and therefore, is not entitled to file a motion for new
trial until after adjudication of guilt). 
Likewise, we do not believe that the deferred adjudication order constitutes
the imposition of a sentence as that phrase is used in Section 20.





[8]  The Code of
Criminal Procedure defines Averdict@ as the
written declaration by a jury of its decision of the issue submitted to
it.  Tex.Code
Crim.Proc.Ann. art. 37.01 (Vernon 1981). 





[9]  In Cuellar
v. State, the dissent provides one explanation for the use of this language
in Section 20.  Cuellar v. State,
70 S.W.3d 815, 833-34 (Tex.Crim.App. 2002)(Keasler J., dissenting
opinion)(stating that Asetting aside the verdict@ refers to jury trial while Awithdrawing the plea@
pertains to bench trial).